IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**JEWELL FAYE GUTHRIE,**

    **Plaintiff,**

v.                                  CASE NO. 2:09-cv-00594

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

    Plaintiff, Jewell F. Guthrie (hereinafter referred to as "Claimant"), filed an application for SSI on May 3, 2007, alleging disability as of December 31, 2003, due to heart problems and bipolar disorder.  (Tr. at 102-04, 122.)  The claim was denied initially and upon reconsideration.  (Tr. at 60-64, 67-69.)  On June 17, 2008, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 72.)  The hearing was

held on September 12, 2008, before the Honorable William R. Paxton. (Tr. at 31-57.)  By decision dated October 30, 2008, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 10-22.)  On April 21, 2009, the Appeals Council considered additional evidence from the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 1-4.)  On May 29, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2008).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe

2

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 12.) Under the second inquiry, the ALJ found that Claimant suffers

from the severe impairments of chest pain, chronic obstructive pulmonary disease ("COPD"), chronic back pain syndrome, bipolar disorder, borderline intellectual functioning, personality disorder, not otherwise specified with dependent and passive personality characteristics, alcohol in remission and cannabis abuse, continuing.[1]  (Tr. at 12.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 15.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 16-17.)  Claimant has no past relevant work.  (Tr. at 20.)  The ALJ concluded that Claimant could perform jobs such as kitchen worker, file clerk, hand packer, assembler and surveillance system monitor.  (Tr. at 21.)  On this basis, benefits were denied.  (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to

---

[1] The ALJ determined that Claimant's marijuana use and occasional alcohol use were "not material" to his residual functional capacity determination.  (Tr. at 19.)

4

>      justify a refusal to direct a verdict were the
>      case before a jury, then there is 'substantial
>      evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was forty-two years old at the time of the administrative hearing. (Tr. at 52.) Claimant attained her GED. (Tr. at 35.) Claimant worked briefly for a nursing home making sandwiches. Claimant left this and other jobs because she felt that people were talking about her. (Tr. at 37.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Evidence before the ALJ

While in the ninth grade, Claimant overdosed on Tylenol 3 and

was admitted to Highland Hospital from October 3-22, 1980.  (Tr. at 170-71.)  Claimant was diagnosed with conduct disorder, unsocialized, nonaggressive type and multiple drug abuse.  (Tr. at 171.)

On April 6, 2003, Claimant was admitted to the hospital after a domestic dispute with her husband. Claimant had been struck in the face and then had fallen and hit her head on a coffee table.  Claimant sustained a laceration in the occiput.  (Tr. at 180.)  Claimant's diagnoses included alcoholism.  (Tr. at 181.)

On June 1, 2005, Claimant reported to the emergency room with a severe left knee laceration and an injury to her left hand after a fall.  Claimant reported falling down a creek bank.  Claimant's left knee laceration was repaired with removal of foreign bodies.  Claimant also had a foreign body removed from her left ring finger.  (Tr. at 334.)

On May 18, 2007, M. Bashar Shalan, M.D. completed a West Virginia Department of Health and Human Resources Medical Review Team, General Physical (Adults) form and opined that Claimant had osteoarthritis, but was able to perform full time work.  (Tr. at 188.)

On August 7, 2007, Lester Sargent, M.A. conducted a consultative examination at the request of the State disability determination service.  Judgment was mildly deficient, insight was fair.  There was evidence of increased psychomotor agitation.

Claimant denied suicidal or homicidal ideation. Immediate memory was within normal limits, recent memory was moderately deficient and remote memory was mildly deficient. Persistence was mildly deficient and pace was variable. (Tr. at 193.) Mr. Sargent diagnosed bipolar I disorder, most recent episode manic, moderate, without psychotic features, alcohol dependence, sustained partial remission and cannabis abuse. He deferred an Axis II diagnosis. (Tr. at 193.) He felt that Claimant's prognosis was poor and that she did not appear capable of managing funds, should she be awarded benefits. (Tr. at 194.)

On August 28, 2007, Claimant reported to Charleston Area Medical Center with complaints of chest pain. An EKG was negative, and she was diagnosed with unremarkable myocardial stress test SPECT study. (Tr. at 320.)

On October 9, 2007, Abdul M. Mirza, M.D. conducted a consultative physical examination at the request of the State disability determination service. Dr. Mirza diagnosed chest pain on nitroglycerin and ibuprofen, history of palpitation, skipping heartbeat, pain in neck of unknown etiology, pain in left side of neck, history of head injury and syncopal episode four to five years ago, history of high cholesterol and xanthelasma, history of bipolar disorder and history duodenitis and marijuana use. (Tr. at 199.)

On August 21, 2007, a State agency medical source, Debra

Lilly, Ph.D., completed a Psychiatric Review Technique form and opined that Claimant's bipolar disorder resulted in mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 212.) Dr. Lilly wrote that

> [t]he claimant has a history of alcoholism and drug abuse and continues to use marijuana on a daily basis. There is no documentation in the record to support a history of mental difficulties beyond her substance abuse. She reports sources for mental health that occurred over 20 years ago. She continues to engage in activities that are simple and repetitive.

(Tr. at 214.)

Dr. Lilly completed a Mental Residual Functional Capacity Assessment on which she rated Claimant as moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, and to interact appropriately with the general public. (Tr. at 216-17.) Dr. Lilly wrote that Claimant "retains the ability to learn and perform simple, unskilled, repetitive tasks that do not require frequent interactions with the general public." (Tr. at 218.)

On November 1, 2007, Serafino S. Maducdoc, Jr., M.D. examined Claimant at the request of the State disability determination service. Dr. Maducdoc diagnosed chronic obstructive pulmonary disease, tobacco abuse, possible coronary artery disease and

bipolar disorder. (Tr. at 222.)

On November 9, 2007, a State agency medical source, A. Rafael Gomez, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Claimant had no exertional or postural limitations. (Tr. at 230- 36.)

On April 18, 2008, a State agency medical source, Holly Cloonan, Ph.D., completed a Psychiatric Review Technique form and opined that Claimant's depression (complicated bereavement), bipolar syndrome and alcohol dependence in sustained remission resulted in mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 248.)

Dr. Cloonan completed a Mental Residual Functional Capacity Assessment on which she rated Claimant as moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public and respond appropriately to changes in the work setting. (Tr. at 252- 54.) Dr. Cloonan wrote that Claimant "may have the above limits in [functional capacity with] her mental condition. She is able to

learn and perform simple work-like activities, with reduced productivity demands and limited interactions with others." (Tr. at 254.)

On April 22, 2008, a State agency medical source, Marcel Lambrechts, M.D., affirmed the physical residual functional capacity assessment by Dr. Gomez and wrote that "[t]here are no new physical reports to change the decision. This claimant has mental problems only. No changes needed in the [residual functional capacity assessment]." (Tr. at 256.)

The record includes treatment notes from Cabin Creek Health Center dated 2002 through July 7, 2008. (Tr. at 257-88.) On February 27, 2008, Claimant presented to Betsy Kent, M.S.W. with acute grief after Claimant's boyfriend of eighteen years died suddenly. Claimant was shaking, not sleeping well, had racing thoughts and intense pain in her shoulders and neck. Claimant had serious stress because of her family situation before his death. Ms. Kent suggested a brief series of sessions (six) to teach about anxiety and support the grieving process. (Tr. at 286.) On February 28, 2008, Jennifer Hall, CFNP diagnosed GERD, COPD, muscle tension, depression and insomnia. She prescribed Prozac and Ambien, among other things. (Tr. at 283.) On March 13, 2008, Claimant saw Ms. Kent for a routine visit. Claimant was "[a] little better, took little boy to someone else to care for him, people around her tell her she is crazy because she says what she

10

feels." (Tr. at 279.)  Ms. Kent diagnosed complicated bereavement (complicated by other significant stressors).  Claimant cried frequently but became more stable.  (Tr. at 279.)

On March 27, 2008, Claimant saw Ms. Hall and reported the Prozac and Ambien were not working.  Ms. Hall diagnosed insomnia and depression and started Claimant on Trazadone and Effexor.  (Tr. at 276.)  On March 27, 2008, Claimant also saw Ms. Kent.  Claimant had called Ms. Kent recently and was very upset about an argument she had had with her son.  Claimant reported that Prozac depressed her more, and she switched to Effexor, which takes twelve to fourteen weeks to be fully effective.  Claimant reported crying a lot and that her heart feels as if it is "coming out of her chest." (Tr. at 274.)

On April 21, 2008, Ms. Kent noted that Claimant had missed a previous appointment because she had her grandson for three weeks. Claimant reported Trazadone did not help for sleep.  Claimant felt she needed something more in addition to Effexor for her nerves. Ms. Kent's assessment was posttraumatic stress disorder ("PTSD") and possible mood disorder in addition to the PTSD.  A nurse practitioner prescribed Vistaril.  Ms. Kent wrote that this may not be effective if Claimant truly has bipolar disorder, but that this had not yet been evaluated.  (Tr. at 271.)  On April 30, 2008, Claimant missed an appointment with Ms. Kent.  (Tr. at 268.)

On May 19, 2008, Claimant saw Ms. Kent again.  Claimant

11

reported her son was hit by a car, but not seriously injured and that her sister's husband had been sent to jail for drug abuse. Claimant reported that Effexor makes her feel nauseous and drowsy, so she stopped taking it. Ms. Kent's assessment was posttraumatic stress disorder and mood disorder, not otherwise specified. Ms. Kent planned to reassess Claimant's diagnosis. (Tr. at 272.) Claimant saw Ms. Hall on May 27, 2008. (Tr. at 269-70.)

On June 2, 2008, Claimant did not attend a scheduled appointment with Ms. Kent. (Tr. at 267.) On June 25, 2008, Claimant complained of being light headed and passing out. Ms. Hall diagnosed dizziness and epistaxis. Ms. Hall scheduled a tilt test and EKG. (Tr. at 264.) Claimant did not show up for an appointment with Ms. Kent on July 7, 2008. (Tr. at 257.)

On July 9, 2008, Ahmad M. Maraikayer, M.D. completed a West Virginia Department of Health and Human Resources Medical Review Team, General Physical (Adults). He noted Claimant's diagnoses, including back pain (recent), chronic tobacco abuse, memory loss, confusion and dizziness, emphysema, exogenous obesity, bipolar disorder, depression, head injury and hyperlipidemia. Dr. Maraikayer opined that Claimant was unable to work. (Tr. at 292.)

On July 12, 2008, Sheila Emerson Kelly, M.A. examined Claimant at the request of her counsel. On the WAIS-III, Claimant had a verbal IQ score of 77, a performance IQ score of 77 and a full scale IQ score of 75. Ms. Kelly stated that Claimant's IQs placed

her in the borderline range of intellectual ability. (Tr. at 301.) Claimant reported she had not graduated from high school and had not attempted to obtain her GED. (Tr. at 299.) Ms. Kelly's report provides extensive background regarding Claimant's alcohol and drug abuse, a difficult childhood, difficulty with children and other stessors. Claimant's mood was depressed, and she complained of occasional suicidal ideation. Attention and concentration were impaired, but probably consistent with intellectual ability. (Tr. at 301.) Claimant's immediate memory was consistent with a diagnosis of borderline intellectual functioning, in other words, slightly limited but not markedly so. (Tr. at 302.) Ms. Kelly diagnosed depressive disorder, not otherwise specified, alcohol dependence, in remission by self-report, anxiety disorder, not otherwise specified on Axis I and personality disorder, not otherwise specified, with dependent, self-defeating and passive aggressive personality characteristics, borderline intellectual functioning and poor literacy on Axis II. She felt that Claimant was marginally competent to manage her own affairs. (Tr. at 303.)

Ms. Kelly completed an assessment on which she rated Claimant's abilities as marked in several categories. (Tr. at 305-08.)

On October 15, 2008, Ms. Kent noted that this had been Claimant's first visit in several months, and that Claimant reported that she often did not have the energy to get to her

13

appointment and was unable to call because she had no phone. Claimant continued to grieve the death of her boyfriend. Ms. Kent diagnosed mood disorder, not otherwise specified, "positive mania screen, long history of blunt and [argumentative] behavior, three marriages (most recent one common law), has never held a job for more than 3 mos., but difficult to get history of mood patterns needed for [diagnosis, mother and brother] bipolar and most likely diagnosis." (Tr. at 348.)

<u>Evidence submitted to the Appeals Council</u>

On February 23, 2009, Ms. Kent completed a Mental Impairment Questionnaire (RFC & Listings). She noted Claimant's diagnosis was bipolar disorder, not otherwise specified. (Tr. at 25.) Ms. Kent opined that Claimant's condition would cause her to be absent from work more than three times per month. (Tr. at 26.) She opined that Claimant was markedly limited in a number of areas. (Tr. at 28-30.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ did not properly evaluate and weigh the evidence of record; (2) the ALJ erred in assessing Claimant's credibility; (3) the Commissioner improperly rejected new and material evidence submitted to the Appeals Council; and (4) the ALJ erred in his analysis of Claimant's mental impairments. (Pl.'s Br. at 10-20; Pl.'s Reply at

14

1-4.)

The Commissioner argues that (1) the ALJ properly weighed and considered all relevant evidence of Claimant's mental health in determining that Claimant was not disabled; (2) Ms. Kelly's and Ms. Kent's opinions were not entitled to controlling weight because neither was a treating source; (3) the ALJ properly relied on the opinions of Dr. Lilly and Dr. Cloonan in making his residual functional capacity finding; (4) the ALJ's residual functional capacity finding is supported by substantial evidence; (5) the evidence provided to the Appeals Council does not provide a basis for changing the ALJ's decision; and (6) the ALJ properly assessed Claimant's credibility. (Def.'s Br. at 10-20.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the ALJ purportedly relied on the opinion of Mr. Sargent, noting that he rejected Ms. Kelly's findings because they were inconsistent with the record as a whole, including Mr. Sargent's findings (Tr. at 20), yet failed to acknowledge the testimony of the vocational expert that when Claimant's IQ scores and limitations from Mr. Sargent were considered, there would be no jobs.

At the administrative hearing, Claimant's counsel posed the following hypothetical question:

> ATTY: If the hypothetical person had a ... verbal IQ of 77, a full performance of 77, and a full scale of 75 ...

>       is very [labile] in terms of her emotional state. She
>       experiences [flight] of ideas, has psychomotor agitation.
>       Her recent memory is moderately deficient. Her rote
>       memory is only mildly deficient, but her concentration
>       and attention is moderately deficient, and her pace is
>       variable, would that profile, in your opinion, allow
>       somebody to perform substantial, gainful activity?
>
>       VE: No.

(Tr. at 55.) The limitations in the hypothetical cited above, with the exception of the IQ scores found by Ms. Kelly and accepted by the ALJ, came from Mr. Sargent's report. In his decision, the ALJ explained his reasons for rejecting the opinion of Ms. Kelly, whose limitations also resulted in an opinion from the vocational expert that Claimant could not work. (Tr. at 20, 54.) The ALJ did not conduct such an analysis as to Mr. Sargent's findings, nor did he address the vocational expert's opinion that Claimant could not work given limitations opined by Mr. Sargent. The Commissioner did not acknowledge this argument in its brief. The ALJ's failure to address the vocational expert testimony related to Mr. Sargent becomes even more problematic in light of the ALJ's reliance on Mr. Sargent's opinion in rejecting the evidence from Ms. Kelly and in relying on Mr. Sargent's report to make findings in the four areas of functioning pursuant to 20 C.F.R. § 416.920a(c)(3) (2008). (Tr. at 15-16.)

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence.

"[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). In the absence of an explanation regarding the weight afforded Mr. Sargent's opinion and the vocational expert's testimony that Claimant could not work given limitations opined by Mr. Sargent, the court is constrained to recommend remand.

In light of the undersigned's recommendation of remand, the court need not address the remaining arguments raised by the parties.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title

17

28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

    May 27, 2010
       Date

Mary E. Stanley
United States Magistrate Judge